**In re John LABIG, Carol Labig, Debtors.**

**Bankruptcy No. 3–86–03330.**

United States Bankruptcy Court, S.D. Ohio, W.D.

June 8, 1987.

**508**

Jennings Hurt, Dayton, Ohio, David M. Whittaker, Columbus, Ohio, for Federal Land Bank of Louisville.

Quentin M. Derryberry, II, Wapakoneta, Ohio, for debtors.

Steven Fansler, West Liberty, Ohio, Trustee.

Raymond M. Donadio, Jr., Greenville, Ohio, for Greenville Nat. Bank.

John R. & Carol Labig, Greenville, Ohio, debtors.

Barry Reich, Springfield, Ohio, for Prudential Ins. Co.

Kalmbach Feeds, Upper Sandusky, Ohio, Jeffrey L. Amick, Greenville, Ohio, for Ansonia Farm Services, Inc.

Richard A. Spencer, Springfield, Ohio, for Janice F. Labig.

Herbert Nelson Ball, Covington, Ky.

1. $47,311.98 (judgment) plus $1,545.09 (interest for 231 days) plus $28.50 (court costs) = $48,885.57

2. $179,464.34 (judgment) plus $27,376.91 (interest for 232 days) plus $36.67 (court costs) = $206,877.92

Randall E. Breaden, Greenville, Ohio, for Keller Grain & Feed, Inc.

## DECISION AND ORDER SUSTAINING THE MOTION OF FEDERAL LAND BANK TO DISMISS DEBTORS' CASE

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon the motion of Federal Land Bank of Louisville to dismiss the chapter 12 bankruptcy case of John R. Labig and Carol Labig on the ground that the debtors are not "family farmers" as required by 11 U.S.C. § 109(f) and as defined by 11 U.S.C. § 101(17).

### FACTS

On December 18, 1986 the debtors filed their petition in bankruptcy under chapter 12 of the Bankruptcy Code. Debtors' schedules listed $1,288,336 of secured debt and $201,500 of unsecured debt for a total indebtedness of $1,489,836. Evidence offered at the hearing on the motion to dismiss establishes that the debtors' schedules were inaccurate (as of the date of filing) in at least the following respects:

1) The claim of Federal Land Bank, as established by its representative, is $601,528 instead of $447,000;

2) The claim of Kalmbach Feeds, Inc., as established by a certificate of judgment, is approximately $48,886, instead of $44,000; [1]

3) The claim of Ansonia Farm Service, Inc., as established by a certificate of judgment, is approximately $206,878, instead of $125,000; [2]

4) The claim of Keller Grain and Feed (listed as the claim of Herbert Ball), as established by a certificate of judgment, is approximately $346,532, instead of $100,000; [3]

3. $326,747.69 (judgment) plus $19,783.89 (interest for 170 days) = $346,531.58

5) The claim of Robert C. Nelson for $68,250 was not listed in the debtors' schedules.

Herbert Ball, a son-in-law of the debtors, testified that in the summer of 1986 he paid to Keller Grain the sum of $19,000 in return for an assignment of that company's certificate of judgment. Approximately a week before the hearing he purchased the judgment of Ansonia Farm Service, Inc. for $8,000 and is in the process of purchasing the judgment of Kalmbach Feeds, Inc. for $5,000. To accomplish these purchases, Mr. Ball borrowed approximately $19,000. Mr. Ball further testified that he is willing to forgive the debts he has been assigned to the extent necessary to enable the debtors to meet the aggregate debt ceiling of chapter 12.

Carol Labig testified that the debtors had purchased a farm from Robert Nelson and granted him a second mortgage. Although she stated that a balance of $68,250 "sounds a little high," she was not able to confirm or dispute the amount of the debt. She conceded that this debt did not appear on the debtors' schedules. Mrs. Labig also testified that shortly before bankruptcy, the debtors paid $25,000 to Mrs. Labig's mother, $8,000 to Crow Seed Corn Company and $9,000 to Herbert Ball.

John Labig was not called to the stand.

## CONCLUSIONS OF LAW

■ Only a "family farmer" with regular annual income is permitted to invoke the provisions of chapter 12 of the Bankruptcy Code. 11 U.S.C. § 109(f). By definition debtors do not qualify as "family farmers" if their *aggregate debts* exceed $1,500,000. 11 U.S.C. § 101(17). The sole issue before the court is whether the aggregate debts of John and Carol Labig exceed $1,500,000. Section 101(17) is silent regarding the appropriate date to determine the amount of debt for purposes of the $1,500,000 limitation, but this court believes it reasonable to use the date of the filing of the bankruptcy petition. *In re Orr*, 71 B.R. 639, 641 n. 4 (Bankr.E.D.N.C. 1987).

With regard to satisfying the debt limitations of chapter 13, the Sixth Circuit has stated that "[c]hapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith." *Matter of Pearson*, 773 F.2d 751, 757 (1985). Because of the current scarcity of case law regarding chapter 12 and the many similarities between chapter 12 and chapter 13, it is prudent to utilize the principles of chapter 13 case law in resolving issues in chapter 12 proceedings. However, judicial application of chapter 13 case law must be tempered by the realization that chapter 12 is merely modeled after chapter 13 and not identical to it. One of the underlying concerns of the court in *Pearson* involved expediency of chapter 13 proceedings. The court found that "time is of the essence" in chapter 13. Bankruptcy Rule 3015 requires that a chapter 13 plan be filed within 15 days of the petition and 11 U.S.C. § 1326 requires that a debtor begin payments within 30 days after the plan is filed. In contrast, a chapter 12 debtor is normally required to file a plan 90 days after he files his petition. 11 U.S.C. § 1221. While time is very important in chapter 12, the temporal constraints on the bankruptcy court are not as severe as in chapter 13. Therefore, this court believes sufficient time exists to conduct inquiries (upon good faith objections of interested parties) into the eligibility requirements of chapter 12.

■ At this juncture in the development of chapter 12 case law, this court will view the debtors' schedules as creating a rebuttable presumption regarding the amount of debt owed by the debtors. In the instant case that presumption has been successfully rebutted by Federal Land Bank. The evidence establishes that the debtors have understated their total liabilities by at least $556,074. Assuming the correctness of the remainder of debtors' schedules, their aggregate indebtedness is $2,045,910. The court recognizes that it is not always possible to complete schedules in an exact and precise manner. However, an understatement of debts by at least 27% of the debtors' total liabilities, without any explanation by the debtors, is too excessive

to be considered within the normal boundaries of estimation and approximation. Three of the erroneously listed debts could have been calculated by examining the creditors' certificates of judgment. Such preparation by a debtor for filing bankruptcy is not unduly burdensome.

■ Debtors contended at the hearing that Herbert Ball's willingness to forego payment on the claims assigned to him would enable the debtors to qualify for chapter 12. Mr. Ball is apparently the assignee of the claims of Ansonia Farm Service, Inc. ($206,878), Kalmbach Feeds, Inc. ($48,886) and Keller Grain ($346,532), which total $602,296. It is true that if Mr. Ball's debt were completely extinguished, debtors' aggregate debt would be reduced to $1,443,614. The problem with debtors' position is that two of the claims (totaling $255,764) were acquired by Mr. Ball after the debtors filed their petition in bankruptcy. As indicated, the court will examine the debtors' financial status as it existed on the date of filing. The claim of Keller Grain ($346,532) was assigned to Mr. Ball prior to bankruptcy, but the debtors listed Herbert Ball as a creditor in the amount of $100,000 and described the debt as "disputed." Frankly, the court does not know how the debtors arrived at the $100,000 figure nor what about the claim is disputed. The debtors provided no enlightment at the hearing.

■ The debtors also listed the claims of Kalmbach Feeds and Ansonia Farm Service as disputed, although the amounts had been reduced to judgment. Again, the court has not been informed of the nature of the disputes. Clearly, a debtor may not shoehorn himself into chapter 12 or chapter 13 merely by listing debts as "disputed." *Craig Corp. v. Albano (In re Albano)*, 55 B.R. 363 (D.N.D.Ill.1985). (The court knows of no reason that debts cannot be compromised *prior* to a bankruptcy proceeding so that a debtor may qualify for the debt limitations of chapter 12, but this should be done in a legally enforceable and provable manner.)

It is evident from the debtors' schedules, the payments to creditors shortly before bankruptcy and the behavior of Mr. Ball that the debtors have struggled to meet the eligibility requirements of chapter 12. Unfortunately, they have been unsuccessful. Congress did not make chapter 12 relief available to all farmers:

Chapter 12 was enacted by Congress as a tool for family farmers to use in reorganizing their business and financial affairs so as to weather the pending financial crisis in much of rural America. However, Congress made it clear that Chapter 12 was not to apply to all farming operations, of whatever size. One of the restrictions which Congress incorporated into Chapter 12 was that a farming operation with in excess of $1,500,000.00 of indebtedness would not constitute a family farm, and thus, would not be eligible for Chapter 12 relief. The court is cognizant of the Stedmans' farming operation, and considers their operation to be a family farm operation, as the term family farm is commonly used by laymen. However, their operation does not meet the stringent guidelines which Congress has placed on farms eligible for Chapter 12 relief. The Eighth Circuit has made it abundantly clear, that the strict letter of the law will be applied when considering eligibility for relief under the Bankruptcy Code. (citation omitted) Obviously, if Congress intends that Chapter 12 relief be available only to those meeting specific criteria, these criteria must be strictly enforced.

*In re Stedman*, 15 B.C.D. 801, 804 (Bankr.N.D.1987).

For the foregoing reasons, it is hereby ORDERED that the bankruptcy petition of John and Carol Labig be DISMISSED *without prejudice*.