**In re Roger L. CREVISTON, Debtor.**

**Bankruptcy No. 2–92–06532.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

June 25, 1993.

Brenda L. Dodrill, Asst. U.S. Atty., Columbus, OH, for United States of America (IRS and Farmers Home Admin.).

Charles W. Ewing, L.P.A., Hilliard, OH, for debtor.

Frank M. Pees, Chapter 12 Trustee, Worthington, OH.

Debra A. Colacci, Porter Wright, Columbus, OH, for B & T Enterprises, Inc. in Joint Venture with CRG I, L.P., as assignee to the claim of Midland Loan Services.

## OPINION AND ORDER ON OBJECTIONS TO CONFIRMATION AND DENYING CONFIRMATION

BARBARA J. SELLERS, Bankruptcy Judge.

### I. Introduction And Jurisdiction

This matter is before the Court on the request of debtor Roger L. Creviston for confirmation of his Second Amended Chapter 12 Plan ("Plan"). Confirmation was objected to by the United States of America on behalf of the Farmers Home Administration ("FmHA") and by Frank M. Pees, the Chapter 12 standing trustee ("Trustee".) The objection of B & T Enterprises, Inc. in joint venture with CRGI, LP has been resolved. The United States of America on behalf of the Internal Revenue Service objected to confirmation of an earlier plan. That objection apparently is still being maintained. At the time of the confirmation hearing the Court took the matter under advisement to consider the contested issues of the plans feasibility and the debtor's eligibility for Chapter 12 relief.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L).

## II. *Case Background*

The debtor asserts that he has been engaged in the occupation of farming since 1965. Allegedly because of cash shortages pressure from FmHA and threat of foreclosure of liens against certain real property, the debtor's spouse formed a corporation known as RVC Enterprises, Inc. ("RVC"). In 1989, and through 1992, RVC provided the debtor with working capital in return for a lien on the crops harvested from farmland owned by the debtor. RVC, organized primarily as a trucking corporation, employed and paid the debtor's wages for driving a truck, but also set up an arrangement whereby the debtor received payments from RVC for its use of the debtor's farmland, farm equipment and for the debtor's services for farming the land. With regard to the farm operations after the formation of RVC, the debtor testified that he provided all of the labor, assisted in the management decisions, and operated and maintained most of the farm equipment. At all times, as the schedules indicate, the debtor was the sole owner of the farmland.

In 1991, the year prior to this bankruptcy filing, the debtor testified to the receipt of the following income:

1. $9,525 as rent from RVC for use of the farmland and equipment and for the farming services of the debtor;

2. $4,300 as wages paid by RVC for the debtor's employment in the trucking operation; and

3. $1,600 as rent from RVC for office space and use of the debtor's machinery shop.

The objections of the Trustee, FmHA and IRS all challenge the debtor's eligibility for relief under Chapter 12 under 11 U.S.C. § 109(f). An additional basis for objection relates to plan feasibility. In apparent response to these objections, the debtor amended his plan twice during the course of this case.

## III. *Issues for Determination*

The Court must determine the following;

1. Whether the debtor meets eligibility requirements for a debtor under Chapter 12 of the Bankruptcy Code as set forth in 11 U.S.C. § 109(f); and

2. whether the Second Amended Plan proposed by the debtor is feasible.

## IV. *Discussion*

### A. *Debtor's Eligibility for Chapter 12*

11 U.S.C. Section 109(f), as set forth below, establishes the requirements necessary to be a debtor under Chapter 12.

**11 U.S.C. § 109 Who may be a debtor**

(f) Only a family farmer with regular annual income may be a debtor under Chapter 12 of this title.

Subsection (19) of the definitional provisions of 11 U.S.C. § 101 defines "family farmer with regular annual income" as:

a family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a plan under Chapter 12.

Therefore, a debtor's eligibility under Chapter 12 is essentially conditioned upon the debtor's qualification as a "family farmer" in accordance with 11 U.S.C. § 101(18). This section can be separated into four parts. A "family farmer" is an individual or individual and spouse filing under Chapter 12 who must:

1. Be engaged in a farming operation;

2. have aggregate debts that do not exceed $1,500,000;

3. have not less than 80% of the individual's or individual and spouse's noncontingent, liquidated debts on the date that the case is commenced arise out of a farming operation owned or operated by such individual or individual and spouse, and;

4. have received from the farming operation more than 50% of the individual's gross income for the taxable year preceding the taxable year in which the case is commenced. 11 U.S.C. §§ 109(f), 101(19) and 101(18).

There is no dispute about the debtor's satisfaction of the first three requirements of this four-part test. The objecting parties, instead, concentrate on part four and assert that the debtor received less than

50% of his income in 1991 from farming operations. If the debtor's farm-related income does not exceed the income earned from other sources in 1991, he will be ineligible for relief under Chapter 12 in 1992.

During 1991 the debtor was an employee of RVC. The income he received in that capacity was not farm income, according to the objectors, because it was earned in the form of wages and rent. As such, the income is not "income from the farming operation". The objecting parties argue for that finding because, although the debtor is receiving payments for services and rent, he is not incurring the traditional risks associated with agricultural production against which the remedy of Chapter 12 was designed to protect.

The real issue before the Court therefore, is whether income from a farming operation includes income in the form of payments for the rental of property and equipment and payments for farming services performed in connection with the property rented. For the reasons set forth below, the Court finds that the debtor's income generated in this capacity, in the form of rent and payments for farming services, is income from farming operations for the purposes of eligibility under 11 U.S.C. § 109(f).

Case law on this issue is not uniform. The first approach, and seemingly the one espoused by the objecting parties, follows the decision of the Court of Appeals for the Seventh Circuit in *In re Armstrong*, 812 F.2d 1024 (7th Cir.1987), *cert. denied* 484 U.S. 925, 108 S.Ct. 287, 98 L.Ed.2d 248. A divided panel held that up-front cash payments collected by a debtor on rented land do not constitute farm related income for the purposes of determining whether a debtor is eligible under Chapter 12. The court found that receipt of cash up-front is "not a risk laden venture in the nature of farming". *Armstrong*, 812 F.2d at 1027.

In the often cited dissent, however, Judge Cudahy interpreted "farm income" more broadly and considered the "totality of the circumstances" in determining whether rental income is "received" from a debtor's farming operation. The essential question to Judge Cudahy, notwithstanding many relevant factors such as the risk involved, debtor participation, and the historical and proposed uses of the land, was whether the land rental was an "integral part" of the farming operation of the debtor. *Armstrong*, 812 F.2d at 1031. The "totality of circumstances approach" enunciated by the dissent in *Armstrong* has been adopted by many courts and seems to be the current majority rule. The case of *Matter of Burke*, 81 B.R. 971 (Bankr. S.D.Iowa 1987), illustrates this second approach.

During the course of the farming operation in *Burke*, the debtors formed a closely held corporation in which the debtors' children became the principals. The corporation leased the farm from the debtors on a crop share basis and employed one of the debtors to provide the corporation with most of the farm labor. The trustee moved to dismiss the debtors' case on the basis of eligibility, arguing that the wages and rent received from the lease arrangement could not be included in the debtors' income for the purposes of the 50% limitation.

The court in *Burke*, however, found that while risk plays an important role in the determination of whether certain earnings should be properly characterized as farm income, the better view is to analyze the "totality of the circumstances". Thus, the court rejected the "restrictive risk analysis approach" espoused by the majority in *Armstrong*, and expressly adopted Judge Cudahy's method found in his dissenting opinion. *Burke*, 81 B.R. at 976, 977.

In so holding, the court considered the historical activity of the farm, the relationship to the tenant, and the various reasons for such lease arrangement, to find that the cash rent arrangement was income from a farming operation. With regard to the debtors' wages earned while working on the farm as an employee of the corporation, the court held that such earnings will usually be farm income if they relate to the debtors' "farming operation". The court determined that "farming activity" should be "liberally construed", finding that the

activity must be related to the debtors' farming operation and not the operations of another. *Burke*, 81 B.R. at 977. The court concluded that the wages were farm related income because the debtors and the corporation were indistinguishably intertwined in the debtors' farming operation. *Burke*, 81 B.R. at 977.

The third approach rejects both the "at risk" test and the "totality of the circumstances" test. The Court of Appeals for the Eighth Circuit found that "this inquiry requires courts to identify those farming activities engaged in or owned or operated by someone claiming "family farmer" status and then determine whether that individual received more than fifty percent of his or her gross income in the relevant year from those activities". *Otoe County National Bank v. Easton (In re Easton)*, 883 F.2d 630, 633 (8th Cir.1989). The proper characterization of income from a particular activity, according the Eighth Circuit, turns not upon the associated risk or the "universe" of particular circumstances surrounding a debtor's financial conditions. That characterization turns rather, upon the "extent to which the income in question bears the relation to his farming activities prescribed by the words of the statute". *Easton*, 883 F.2d at 633.

Important to the *Easton* decision, and common to most of the cases considering the issue, is whether the income in question is derived from the debtor's farming efforts as opposed to the farming efforts of third parties. A logical relationship must exist between the activity, the income, and the "farming operation" sought to be protected under Chapter 12. The cases which include tangentially related earnings in a debtor's farm income, have the common theme that there be some "indicia of involvement" on the part of the debtor to the farming activity which generates the income. *Easton*, 883 F.2d at 635.

The debtors in *Easton* leased 290 acres of a total 520 acres to a neighbor, and an additional 60 to their grandson. The remaining acreage was utilized by the debtors as a hog raising operation. The financial difficulties associated with the hog op-eration forced the debtor to petition for relief under Chapter 12. The bankruptcy court, operating under the dissenting opinion in *Armstrong*, found that rent collected by the debtor on the leased acreage was farm related income for the purposes of the eligibility test.

Based upon the facts in the record before it, the Eighth Circuit could not find the existence of a logical relationship between the income received from the 290 acres leased to the neighbor and the livestock activity that the debtor operated during the relevant year. Accordingly, the court remanded the case for further determination as to whether the debtor had "some significant degree of engagement" in the leased operation. *Easton*, 883 F.2d at 636. Presumably, the court believed that the debtors must play a significant role in their grandson's operation to warrant the inclusion of rent payments from the acreage leased to him.

■ While declining to expressly adopt any one of three approaches advanced in case law above, this Court finds significance in many of the factors utilized by those courts in coming to their respective conclusions. In finding that the income received by the debtor for rent of his land, his equipment and his farming services is farm related, the Court considered the following:

1. The extent to which the debtor was involved in the operations which produced the farming income;

2. the historical source of the debtor's income;

3. whether the income challenged as "non-farm" related is an isolated departure from the norm. Such departures might include: sale of farm equipment to downsize the farm operation, or an attempt to establish and alternative income producing occupation such as hauling farm produce at the behest of other farmers on a regular basis;

4. the degree of "farming" risk attributable to the debtor from the activity questioned (is he paid up-front or paid only if the crop is successful);

5. the degree to which income producing farm assets are owned by unrelated third parties; and

6. the characterization or treatment of the challenged income on an income tax return.

The mere fact that the debtor was an "employee" of RVC during the relevant year is more important, perhaps, to the degree of involvement that the debtor has in the farming operation than it is as a litmus test for finding that wages earned while an employee are not farm related. It is more significant that the farming operation protected by the Bankruptcy Code is that of the debtor. His labor, ownership, and decisional responsibilities appear to have remained historically constant despite the incorporation of RVC. Thus, the Court finds that the debtor remains involved in the "farming operation" from which the income was generated. Moreover, any risks associated with the agricultural operations in this case are of necessity borne by both the owner of the property and any lessee with an interest in crops. Therefore, the payments made to the debtor by RVC for rent of the land, equipment and the debtor's farming services are includable as farm income for purposes of Chapter 12 eligibility.

There is no dispute that the debtor's wages earned for driving a truck for RVC are not farm related. Additionally, based upon facts presently in the record, the Court must find that $1,600 received by the debtor for the lease of office space and a machinery shop are not farm income, but income and more logically related to the trucking operation of RVC. Nevertheless, after conducting the necessary mathematical computation, the Court concludes that the debtor's income from farming operations exceeds his non-farm income. Accordingly, the debtor is eligible for relief under Chapter 12 pursuant to 11 U.S.C. § 109(f).

### B. *Feasibility of the Plan*

Sections 1225(a)(1) & (6) of 11 U.S.C. require the Court to find that the debtor will be able to make all payments proposed under the plan and that he has complied with all requirements of the Bankruptcy Code. In this case however, the debtor has failed to comply with the reporting requirements set forth in 11 U.S.C. § 1203 as specifically set forth in the Court's order served on the debtor on October 2, 1992. To date the debtor has submitted only one operating report for the month of January and an incomplete summary of operations. The information contained in such documents is necessary before the Court can find that the debtor can meet the projected requirements of his plan. Further, the testimony offered during the hearings on confirmation was insufficient to establish feasibility. Therefore, the Court cannot find that the debtor can make the payments required by the plan or that he has satisfied all prerequisites for confirmation.

### V. *Conclusion*

Based upon the foregoing, the Court finds that the debtor is eligible as a "family farmer" for relief under Chapter 12. However, the Court finds further that insufficient information has been offered to establish the feasibility of the debtor's Second Amended Plan. Accordingly, confirmation is DENIED.

IT IS SO ORDERED.